**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BROTHERS PETROLEUM, L.L.C.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 23-445** |
| **CERTAIN UNDERWRITERS AT LLOYD'S, ET AL.** | * | **SECTION L** |

**ORDER & REASONS**

Before the Court is a motion to compel arbitration by Defendants Certain Underwriters at Lloyd's, London Subscribing to (1) Policy No. VPC-CN-0000756-03 and (2) Policy No. VPC-CN-0000756-04, Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Binding Authority B604510568622021, Independent Specialty Insurance Company, and Interstate Fire Casualty Company (collectively, "Defendants"). R. Doc. 30. Plaintiff Brothers Petroleum L.L.C. opposes the motion. R. Doc. 35. Defendants submitted a reply. R. Doc. 38. Considering the briefing and the applicable law, the Court rules as follows.

**I. BACKGROUND**

This case arises out of alleged hurricane damage to twenty-four properties owned by Plaintiff. R. Doc. 13 at 3-12. Plaintiff, an LLC operating in Louisiana, originally sued for breach of an insurance policy which was in effect at the time of Hurricane Zeta. R. Doc. 1-2 at 10. Plaintiff later amended its complaint to also bring claims for breach of a second insurance policy which was in effect at the time of Hurricane Ida. R. Doc. 13 at 10. Defendants are a group of insurance companies who jointly subscribed to either of the two policies, which Plaintiff obtained through Lloyd's of London. *Id.* at 1-2. Plaintiff alleges two causes of action as to each policy: (1) breach of insurance contract and (2) violation of La. R.S. §§ 22:1892 and 22:1973. *Id.* at 13-18. Plaintiff filed suit in state court on October 27, 2022. R. Doc. 1-2. Defendants removed the case to this

Court on February 3, 2023. R. Doc. 1.

## II. PRESENT MOTION

Defendants move the Court to compel arbitration and stay or dismiss the instant proceedings pending arbitration. R. Doc. 30. Defendants note that both of Plaintiff's insurance policies include arbitration agreements providing:

> All matters in dispute between the named insured and the insurers (hereinafter referred to as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal . . . .

R. Doc. 30-1 at 1 (citing R. Doc. 30-2 at 42; R. Doc. 30-3 at 32-33). Defendants argue that Plaintiff's claims for breach of insurance policy and bad faith fall squarely within these arbitration agreements. *Id.* at 5.

Accordingly, Defendants contend that two independent laws require that the case be sent to arbitration. First, Defendants contend that the Court must refer the case to arbitration pursuant to the Federal Arbitration Act ("FAA") because there is a valid arbitration agreement, and the dispute falls within the scope of the agreement. *Id.* at 10. Second, Defendants contend that the Court must refer the case to arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention"). *Id.* at 8. The New York Convention, Defendants note, is an international treaty that largely requires signatory states to enforce arbitration agreements where foreign parties are involved. *Id.* at 7. Defendants note that three of the members subscribing to the policies are foreign corporate entities: (1) Nephila 2357 Ltd, a citizen of England and Wales, (2) RenaissanceRe Corporate Capital UK Limited, a citizen of England and Wales and (3) RenaissanceRe Specialty U.S. LTD, a citizen of Bermuda. *Id.* at 3-4. Finally, Defendants claim that even questions as to the enforceability of an arbitration clause must be referred to arbitration. *Id.* at 11.

Plaintiff opposes the motion and makes two arguments in support. R. Doc. 35. First, Plaintiff contends that Defendants have waived their right to enforce arbitration by failing to request arbitration for nearly two years. *Id.* at 1. Plaintiff argues that Defendants did not plead any affirmative defenses regarding arbitration in their answer. *Id.* at 3. Further, Plaintiff contends that Defendants have substantially engaged in the judicial process by using the discovery process to produce documents and conduct property inspections. *Id.* Defendants also participated in two court-ordered mediations as part of the "Streamlined Settlement Program" implemented by the Court in its Case Management Order for Hurricane Ida cases. *Id.* In support of its argument, Plaintiff cites *Shubham, LLC v. Great American Insurance Co.*, where the Western District of Louisiana found that the defendant waived its right to arbitration when it participated in a settlement program for hurricane cases for two years and engaged in a mediation before requesting arbitration. No. 6:21-3027, 2024 WL 2261953, at *4 (W.D. La. May 17, 2024).

Next, Plaintiff argues that the policies contain "Service of Suit" provisions which conflict with, and override, the arbitration agreements. *Id.* at 6. These provisions provide that:

> In the event of our failure to pay any amount claimed to be due under this Policy, we agree to submit to the jurisdiction of any court of competent jurisdiction within the United States in which a suit for those amounts may be brought.

Plaintiff argues that these clauses mean that it may file suit for a breach of the policy in federal court rather than submitting to arbitration. *Id.* Further, Plaintiff notes that these provisions are found in "endorsements" which state that "to the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls." *Id.* Accordingly, Plaintiff argues that the service of suit provisions trump the general arbitration clause. *Id.*

Plaintiff acknowledges that courts have interpreted similar service of suit provisions to refer only to a right to sue in court to enforce an award made by the arbitration tribunal, not to

litigate the underlying breach of policy. *Id.* at 11. However, Plaintiff contends that those holdings are not on point for two reasons. First, Plaintiff notes that the arbitration clause provides that:

> If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

Plaintiff reasons that because the arbitration provision "specifically references an action for the enforcement of an arbitration award" and "this Service of Suit endorsement does not specifically limit its scope to an action to enforce an arbitration award," the service of suit provision must be read broadly to apply "to any suit for amounts claimed to be owed under the policy." *Id.* at 6. Second, Plaintiff argues that the service of suit provision notes that Plaintiff may bring a claim in courts "in which a suit for those amounts may be brought." *Id.* at 10. Plaintiff interprets this as an express recognition that it can bring a suit for breach of the policy in any court where it could also, pursuant to the arbitration clause, bring an enforcement action. *Id.*

Defendants replied. R. Doc. 38. First, Defendant again avers that the parties agreed to delegate all issues of arbitrability to the arbitration panel. *Id.* at 3. Second, as to Plaintiff's argument of waiver, Defendants dispute that they have substantially invoked the judicial process. *Id.* at 4. They contend that they have not engaged in an "overt act in court," which is required to find waiver. *Id.* (citing *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)). Defendants argue that the *Shubham* case cited by Plaintiff is an anomaly and is inconsistent with other Fifth Circuit cases holding that waiver only occurs when a party has sought a decision on the merits by filing a dispositive motion. *Id.* Moreover, Defendants argue that the *Shubham* court failed to consider the effect of a recent Supreme Court case, *Morgan v. Sundance*, which held that a federal court analyzing waiver "does not generally ask about prejudice." *Id.* (citing 596 U.S. 411, 417 (2022). Defendants note that this Court has held that a party's participation in a streamlined settlement program for hurricane cases does *not* waive its right to invoke arbitration

later on. *Id.* at 7. Finally, as to Plaintiff's argument that the Service of Suit provision overrides the arbitration provision as to a suit for breach of policy, Defendants contend that "[e]very court addressing this issue has rejected this argument, finding that [the provisions] can be read harmoniously." *Id.* at 10.

## III. LAW & ANALYSIS

This case presents three issues: (1) whether the "Service of Suit" provisions override the arbitration agreements (2) whether Defendants waived their right to arbitrate and (3) whether the arbitration agreements are enforceable. The Court takes each issue in turn.

### A. The "Service of Suit" Provision Does Not Override the Arbitration Clause.

Plaintiff argues that the service of suit clauses are inconsistent with, and thus trump, the arbitration agreements. The Court disagrees. In *McDermott International Inc. v. Lloyd's of London*, the Fifth Circuit enforced an arbitration clause despite the presence of a service of suit clause nearly identical to those in the instant case. 944 F.2d 1199, 1205 (5th Cir. 1991). There, the clause provided: "It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters . . . will submit to the jurisdiction of any court of competent jurisdiction within the United States." *Id.* at 1200. The Court held that this clause did not override the policy's arbitration clause because "[t]he service-of-suit clause's 'failure to pay a claim' provision could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *Id.* Accordingly, the Court found that "the policy may be read as contemplating that a claim for failure to pay under the policy not be made in court until after an arbitration proceeding." *Id.*

Here, as in *McDermott*, the service of suit clauses explicitly only apply "in the event of [Defendants'] failure to pay." R. Doc. 35 at 6. Accordingly, the reasoning of *McDermott* controls:

these provisions only apply to a suit to *enforce an award* rendered by an arbitration tribunal, not to a suit for breach of the policy. *Id.*

Plaintiff's argument that the reference to an enforcement action in the arbitration clauses somehow conflicts with this conclusion is unavailing. In fact, the arbitration agreements and the Service of Suit provisions are complimentary. The arbitration agreements provide that "[i]f either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets." *Id.* at 10. Thus, the arbitration agreements (1) explain that suits for enforcement are an exception from the general requirement to arbitrate and (2) specify that only particular courts, those located where a party in default is domiciled or has assets, can hear such claims for the enforcement of an award. The Service of Suit provisions then confirm that Defendants will submit to the jurisdiction of those courts identified in the arbitration clauses. Accordingly, these provisions in fact work harmoniously and *contemplate* that enforcement actions—and only enforcement actions—can be brought directly in certain courts. *See Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.*, No. CV 22-2671, 2023 WL 4235565, at *4 (E.D. La. June 28, 2023) (holding that a service of suit provision submitting to the jurisdiction of courts "in which a suit for these amounts may be brought" could be interpreted "consistent with the arbitration clause to provide a judicial forum for disputes concerning the enforcement of arbitration awards").

**B. Defendants Did Not Waive their Right to Arbitrate by Participating in a Settlement Program.**

"There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 344 (5th Cir. 2004) (*citing Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999)). To waive arbitration, a party must "at the very least,

engage in some overt act in court that evidences a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* A party waives their right to arbitrate by filing a dispositive motion in court before seeking arbitration. *See In re Mirant Corp.*, 613 F.3d 584, 590-91 (5th Cir. 2010). The Supreme Court has recently clarified that "waiver does not include a prejudice requirement." *Morgan*, 596 U.S. at 419.

Federal district courts within this state are divided as to whether a party waives its right to arbitrate by participating in a Streamlined Settlement Program ("SSP") prior to commencing litigation in earnest. In *Shubham*, a section of the Western District of Louisiana held that defendant insurers waived their right to arbitrate where they (1) did not invoke arbitration in their answer, (2) did not opt of a SSP, and (3) spent two years in the SSP during which time they engaged in some discovery and a mediation. 2024 WL 2261953, at *5. The Court noted that it would be "inherently unfair to require plaintiff to now re-assert its claims in arbitration." *Id.*

However, in *711 Tchoupitoulas Condominium Association v. Independent Specialty Insurance Co.*, this Court held that the defendant's participation in the SSP did not waive its right to arbitrate. There, this Court held that "[p]articipation in the [SSP], which places its focus on resolution of disputes is, in the Court's view, not the same as invoking the legal process." No. 22-CV-276, 2023 WL 8716580, at *2 (E.D. La. Dec. 18, 2023). Further, the parties did not "engage in extensive discovery, nor did either party file a dispositive motion or motion practice in general." Similarly, in *Queens Beauty Supply, LLC v. Independent Specialty Ins. Co.*, this Court found no waiver, reasoning that Defendant merely "participated in this district's settlement program for Hurricane Ida cases—which, if anything, evidences a desire to *settle* this dispute, not to resolve it by litigation." No. CV 22-3444, 2023 WL 7154117, at *1 (E.D. La. Oct. 31, 2023) (abrogated on other grounds).

Here, the Court finds the reasoning of *711 Tchoupitoulas* and *Queens Beauty Supply* more persuasive than that of *Shubham*. Construing early-stage settlement efforts as a waiver of a defendant's right to arbitration would strongly discourage defendants from using SSPs to efficiently settle cases. Such a holding would therefore undermine the very purpose of SSPs and hinder efficient resolution of claims. Moreover, the Court is not persuaded that operating within a SSP in an attempt to settle a case is the kind of "overt act in court" required to waive arbitration. *Republic Ins. Co.*, 383 F.3d at 344. As the Court observed in *Queens Beauty Supply*, attempts to settle a case are distinguishable from attempts to litigate. 2023 WL 7154117, at *1.

Here, Defendants have not sought a decision on the merits. Further, it appears that settlement negotiations ended only a few weeks before Defendants filed the instant motion to compel arbitration. *See id.* (finding no waiver where defendant moved to compel arbitration "immediately after that settlement effort failed and the case was returned to this Court's docket for resolution by litigation"); R. Doc. 38. at 9. Finally, the Court notes that discovery is still in fairly early stages: no depositions have been taken, and the parties have not yet retained experts. *Id.* at 6. Accordingly, the Court finds that Defendants have not invoked the judicial process such as to waive their contractual right to arbitration.

**C. This Case Must be Referred to Arbitration Pursuant to the New York Convention**.

"The Convention is an international treaty that provides citizens of signatory countries the right to enforce arbitration agreements." *Bufkin Enterprises, L.L.C. v. Indian Harbor Insurance Co.*, No. 23-30171, 2024 WL 909600 (5th Cir. Mar. 4, 2024). "In determining whether the Convention requires compelling arbitration in a given case," the Court "conduct[s] only a very limited inquiry." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). An agreement "falls under" the New York Convention and the Court should compel arbitration only if four prerequisites are met: "(1) there is a written agreement to arbitrate the

matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985)); 9 U.S.C. § 202.

Here, all four prerequisites are satisfied. The arbitration clause is (1) a written agreement to arbitrate in (2) the United States, a signatory of the Convention, (3) the agreement arose out of the insurance relationship between the parties – which is a commercial relationship, and (4) several Defendants are not American citizens. *See* R. Doc. 30-1 at 4. Accordingly, the Court finds that the New York Convention requires that this case be referred to arbitration.

The Court notes that the Fifth Circuit recently held in *S.K.A.V. LLC v. Independent Specialty Insurance Co.*, that Louisiana Revised Statute § 22:868 voids arbitration agreements in specialty and surplus line insurance policies. 103 F.4th 1121 (5th Cir. 2024). However, that case did not implicate the New York Convention because no foreign parties were involved. *Id.* Accordingly, *S.K.A.V.* does not disrupt prior settled case law holding that "§ 22:868 does not come into play" in cases that fall under the Convention because the Convention, as an international treaty, controls.[1] *See Bufkin Enterprises, LLC*, 96 F.4th at 732.

**D. The Court Will Stay this Matter Pending Arbitration Rather Than Dismissing It.**

Lastly, Defendants request the Court to stay or, in the alternative, dismiss this action pending arbitration. R. Doc. 30-1 at 12-13. Recently, the Supreme Court clarified that when a matter is subject to arbitration under the FAA, the Court must stay the suit rather than dismissing it. *Smith v. Spizzirri*, 601 U.S. 472 (2024). Although that case was decided in the context of the

---

[1] Because the New York Convention requires arbitration, the Court need not reach the issue of whether the Federal Arbitration Act separately compels arbitration.

FAA, a stay is also appropriate in the instant Convention case. In *Spizzirri*, the Court reasoned that "[k]eeping the suit on the court's docket makes good sense in light of [its] potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee." *Id.* at 478. Because that reasoning applies equally to the instant case, the Court will stay the matter rather than dismissing it.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration, R. Doc. 30, is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** to the extent Defendants move the Court to compel arbitration and stay this litigation. The motion is **DENIED** to the extent Defendants move this Court to dismiss Plaintiff's claims against them. **IT IS FURTHER ORDERED** that this matter be **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration.

New Orleans, Louisiana this 8th day of October, 2024.

HONORABLE ELDON E. FALLON