UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BROTHERS PETROLEUM, LLC** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 23-445** |
| **CERTAIN UNDERWRITERS AT LLOYD'S, ET AL.** | * | **SECTION L(5)** |

## ORDER & REASONS

Before the Court is a Motion for Reconsideration of this Court's Prior Order Compelling Arbitration filed by Plaintiff Brothers Petroleum, LLC ("Plaintiff"). R. Doc. 41. Defendants Certain Underwriters at Lloyd's, London Subscribing to (1) Policy No. VPC-CN-0000756-03 and (2) Policy No. VPC-CN-0000756-04, Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Binding Authority B604510568622021; Independent Specialty Insurance Company; and Interstate Fire Casualty Company (collectively, the "Defendants") oppose the motion. R. Doc. 43. Plaintiff submitted a reply. R. Doc. 38. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I.  BACKGROUND**

This case arises out of alleged hurricane damage to twenty-four properties owned by Plaintiff. R. Doc. 13 at 3-12. Plaintiff, a limited liability company operating in Louisiana, has sued Defendants for an alleged breach of two different surplus line insurance policies, which were in effect at the time of Hurricane Zeta and Hurricane Ida respectively. R. Doc. 1-2 at 10; R. Doc. 13 at 10. The policies were insured by two domestic insurers–Independent Specialty Insurance Company ("Independent Specialty") and Interstate Fire Casualty Company ("Interstate Fire")–as well as a group of foreign insurers who jointly subscribed to either of the two policies vis-à-vis the Lloyd's of London insurance market. *Id.* at 1-2. Notably, an arbitration clause was included in both

1

policies requiring all matters in dispute to be referred to an arbitration tribunal in New York. On this basis, Defendants moved to compel arbitration and stay or dismiss the instant action pending arbitration, which this Court ultimately granted. R. Doc. 39. Relying on the Fifth Circuit's decision in *Bufkin Enterprises, L.L.C. v. Indian Harbor Insurance Co.*, the Court specifically held that an international treaty known colloquially as the New York Convention (the "Convention") required Plaintiff's claims against Defendants, both domestic and foreign insurers, be referred to arbitration. 96 F.4th 726 (5th Cir. 2024).

## II.  PRESENT MOTION

In the present motion, Plaintiff seeks reconsideration of this Court's prior order compelling arbitration pursuant to Federal Rule of Civil Procedure 54(b). R. Doc. 41-1. It argues that the Louisiana Supreme Court's recent decision in *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.* now clearly and definitively confirms that Louisiana law voids arbitration clauses in all insurance contracts issued in the state, and that domestic insurers may not resort to state law equitable estoppel principles to enforce an arbitration clause in another insurer's policy under the Convention. 2024-00449 (La. 10/25/24), 395 So.3d 717, *reh'g den.*, 2024-0049 (La. 12/12/24), 397 So.3d 424. As a result, Plaintiff claims arbitration should no longer be mandated in this case as to the two domestic insurers and requests this Court to partially alter its prior decision to comport with *Police Jury*'s clarifying and controlling precedent. R. Doc. 41-1 at 6-10. Defendants oppose the motion and insist the Convention still compels arbitration as to domestic insurers in spite of the holding in *Police Jury* on two separate bases. R. Doc. 43. First, they contend that the Convention is per se applicable to this case because the arbitration agreements at issue are found in a single policy document subscribed to by both foreign and domestic insurers and provided as part of a seamless coverage program. *Id.* at 11-12. Second, they claim that the Court need not resort

2

to equitable estoppel under Louisiana law to find the Convention applies because "applicable federal common law" estops plaintiff from avoiding their agreements to arbitrate. *Id.* at 12-15. In the alternative, Defendants request that this Court stay this matter because allowing the litigation to proceed would destroy the signatories' right to a meaningful arbitration. *Id.* at 15-16.

### III.  APPLICABLE LAW

Rule 54 provides that district courts "possess[] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco*, 659 F.2d 551, 552 (5th Cir. 1981). Under such a standard, district courts can be "more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017). Relevant considerations when ruling on a Rule 54(b) motion include "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact." *Henry v. New Orleans La. Saints, L.L.C.*, No. 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016). Courts may also grant reconsideration when "necessary to prevent manifest injustice." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998).

### IV.  DISCUSSION

As an initial matter, the Court notes that it has already addressed the enforceability of arbitration clauses against domestic insurers in light of *Police Jury* and granted substantially similar motions to the one filed here on two separate occasions. *Certain Underwriters at Lloyd's London v. Belmont Commons LLC*, No. CV 22-3874, 2025 WL 239087 (E.D. La. Jan. 17, 2025); *Crescent City Surgical Operating Co. v. Certain Underwriters at Lloyd's, London*, No. CV 22-2625, 2025 WL 239404 (E.D. La. Jan. 17, 2025). With these prior decisions in mind, the Court

3

will lift the stay and allow the Plaintiff to litigate its claims against the domestic insurers in this case for the following reasons.

### A. The Policies' Contractual Language Makes the Convention Facially Inapplicable.

First, the Court disagrees with the Defendants' contention that the arbitration agreements against the domestic insurers are per se enforceable under the Convention without resorting to equitable estoppel principles. The Fifth Circuit has explicitly held that a district court should only compel arbitration pursuant to the Convention if the following four-prong test is met: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002).

In this case, Defendants cannot meet the test's last prong requiring the presence of at least one foreign citizen to the contract in question. Both insurance policies in the present case provide that they "shall be constructed as a separate contract between the Insured and each of the Insurers," and that "[t]his evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriters at Lloyd's with any other insurance company(ies)." R. Doc. 30-2 at 66-67; R. Doc. 30-3 at 68-71. As noted by this Court briefly in *Belmont Commons* and more extensively in *Crescent City*, this contractual mandate requiring the interpretation of the instant policies as separate contracts is crucial. This is because Plaintiff's "independent agreements to arbitrate with each of the domestic insurers respectively are entirely between United States citizens, separate and apart from its agreements to arbitrate with the foreign insurers that subscribed to the policy vis-à-vis Lloyd's." *Crescent City*, 2025 WL 239404, at *4.

Accordingly, the absence of any foreign party to those "separate contracts" involving the

domestic insurers makes the Convention facially inapplicable. To the extent Defendants argue that the arbitration agreements at issue satisfy the foreign party requirement because they are contained in a single policy document and have a reasonable relationship to a foreign state, this Court has already rejected such arguments in *Crescent City* and will not depart from its reasoning in that case. *Id.* Indeed, other sections of this Court facing similar contractual language providing for separate contracts contained in a single policy document have agreed that the Convention does not inherently apply in this context and thus focused their analysis on whether equitable estoppel was an appropriate vehicle for the enforcement of the arbitration agreements involving the domestic insurers. *Par. of LaFourche v. Indian Harbor Ins. Co.*, No. CV 23-3472, 2025 WL 754333, at *10 (E.D. La. Mar. 10, 2025) ("Under this language alone, there is facial inapplicability of the Convention as to the domestic insurers, because neither party to the bilateral insurance agreements between plaintiff and those Defendants is a foreign citizen."); *see also 3501 N. Causeway Assocs., LLC v. Certain Underwriters at Lloyd's, London*, 348 F.R.D. 298, 301 (E.D. La. 2025) (noting the separate contract language in the insurance policy at issue and then discussing principles of equitable estoppel for the enforcement of the Convention).

**B. Equitable Estoppel Is an Issue of State Law and May Not Be Used to Compel the Domestic Insurers to Arbitration Under the Convention.**

Next, the Court will stand by its position, first articulated in *Belmont Commons* and subsequently followed by other sections of this Court, that whether a plaintiff can be compelled to arbitrate with a domestic insurer under the Convention through equitable estoppel is a matter of state law, not federal law. *Ramsey v. Indep. Specialty Ins. Co.*, No. CV 23-0632, 2025 WL 624031, at *3 (E.D. La. Feb. 26, 2025) ("As such, this Court agrees with and adopts the legal analysis seen in Judge Fallon's Order, determining that the doctrine of equitable estoppel is a matter of state law."); *Apex Hosp. Grp., LLC v. Indep. Specialty Ins. Co.*, No. CV 23-2060, 2025 WL 457874, at

5

\*2 (E.D. La. Feb. 11, 2025) ("[T]he Court adopts *Belmont Commons'* analysis, and applies it to the facts presented here."); *3501 N. Causeway Assocs.*, 348 F.R.D. at 303. The Supreme Court's decision in *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC* supports this conclusion. 590 U.S. 432, 440 (2020). As this Court has explained in *Belmont Commons*, the *Outokumpu* Court's analysis notably relies on *Arthur Andersen v. Carlise*, which dictates *state* principles of contract law govern the availability of equitable estoppel. Furthermore, the Fifth Circuit has also explicitly stated–relying on *Arthur Andersen*–that whether a "non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate" through "equitable estoppel" is a matter of "state contract law" and not "federal common law." *Crawford Professional Drugs Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014). And while the Court acknowledges *Arthur Andersen* and *Crawford* arise from the FAA context, the Fifth Circuit has clarified that these cases are equally instructive as to those involving the Convention and thus mandate a conclusion that state law must apply here. *Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*, 601 F.3d 329, 334-35 (5th Cir. 2010). In fact, *Bufkin* itself–the case this Court previously held required this matter to proceed to arbitration–notably relied on Louisiana state law in concluding domestic insurers could be estopped from avoiding arbitration under the Convention. 96 F.4th at 733 (citing *Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.*, 2018-1249 (La. App. 1 Cir. 12/30/20), 317 So. 3d 715, 743-45, a Louisiana state law case, for its equitable estoppel holding).

      Furthermore, Defendants argue that this Court's reasoning in *Belmont Commons* somehow flips the Constitution's Supremacy Clause on its head by allowing Louisiana state law to limit an insurer's rights under the Convention and thus subvert an international treaty. Put simply, this Court's decision yields no such result. As explained above, the Convention is not facially

6

applicable to Plaintiff's agreements to arbitrate with the domestic insurers under the Convention's four-prong test because the agreements lack the presence of a foreign party. The Defendants are thus attempting to use state law equitable estoppel principles here to *expand* the scope of the Convention beyond its limits and force Plaintiff to arbitrate its disputes with the domestic insurers on their separate contracts with foreign insurers. Of course, it is well-settled that the Convention "does not prevent the application of domestic laws that are more generous in enforcing arbitration agreements." *Outokumpu*, 590 U.S. at 440. However, just because a state law, such as Louisiana's equitable estoppel doctrine, cannot be used to augment the scope of the Convention, it does not then follow that the rights established under the Convention itself are diminished. *See id.* Indeed, the Convention's baseline and its corresponding four-prong test outlined above remain unchanged. The Court merely finds that the applicable state law does not expand the scope of the Convention to require a domestic plaintiff to arbitrate a "separate contract" with a domestic insurer.

Lastly, the Court is aware that other sections of this Court have agreed with Defendants and concluded that federal common law, not state law, should determine whether equitable estoppel is available to force a non-signatory to arbitrate. *Par. of LaFourche*, 2025 WL 754333; *Arrive Nola Hotel, LLC v. Certain Underwriters at Lloyds, London*, No. CV 24-1585, 2025 WL 871608 (E.D. La. Mar. 20, 2025). In reaching this opposite outcome, those sections relied on a concurring opinion from the Eleventh Circuit written by Judge Tjoflat in *Outokumpu Stainless USA, LLC v. Coverteam SAS* after remand from the Supreme Court. There, applying the so-called "*Boyle* test," Judge Tjoflat urged that there is a "uniquely federal interest" involved in Convention cases that requires the usage of federal common law. No. 17-10944, 2022 WL 2643936, at *6 (11th Cir. July 8, 2022) (Tjoflat, J., concurring) (citing *Boyle v. United Techs. Corps.*, 487 U.S. 500, 506-07 (1988)). He reasoned that cases of this nature bear on international treaty obligations

and that the application of state law would "frustrate specific objectives" of the Convention by interfering with the standardized application of arbitration agreements. *Id.*

This Court equally considered the applicability of the *Boyle* test in *Belmont Commons* but ultimately concluded that it would not follow non-binding precedent arising outside of this Circuit when "[s]uch a departure from *Arthur Andersen* and *Outukumpo* is simply not supported by Fifth Circuit case law." *Belmont Commons*, 2025 WL 239087, at *8. Moreover, the Court has conducted a review of the applicable case law and found the Fifth Circuit has only ever applied the *Boyle* test, with the Supreme Court's guidance, in the limited context of the government contractor defense for entities supplying military equipment to the federal government. *See, e.g.*, *Humphries v. Elliott Co.*, 760 F.3d 414, 416 n.1 (5th Cir. 2014); *Williams v. Todd Shipyards Corp.*, 154 F.3d 416 (5th Cir. 1998). Given that the *Boyle* test has existed for nearly forty years and has never been used by the Fifth Circuit without direct instruction from the Supreme Court, this Court declines the invitation to craft an entirely new doctrine of reliance on federal common law in the context of Convention cases.

Accordingly, the Court will stand by its decisions in both *Belmont Commons* and *Crescent City* and concludes that the Louisiana Supreme Court's decision in *Police Jury* controls on the issue of estoppel in this case. Reversal of this Court's prior order compelling Plaintiff to arbitrate its disputes with the two domestic insurers is warranted. *See* Fed. R. Civ. P. 54(b).

**C. The Court Will Not Enter a Discretionary Stay.**

Finally, Defendants argue that even if Plaintiff cannot be compelled to arbitrate with the domestic insurers, the Court should exercise its discretion to stay the litigation pending conclusion of the arbitration proceedings against the foreign insurers. District courts have "broad discretion" to "stay proceedings in the interest of justice and in control of their dockets." *Wedgeworth v.*

8

*Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "The party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding." *Id.* "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). Factors the court considers include whether (1) the arbitrated and litigated disputes must involve the same operative facts; (2) the claims asserted in the arbitration and litigation must be "inherently inseparable"; and (3) the litigation must have a "critical impact" on the arbitration. *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). Finally, "before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the other case." *Wedgeworth*, 706 F.2d at 545. Ultimately, it is the Court's duty to "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255.

Here, the Court finds, as it did in *Belmont Commons* and *Crescent City*, that imposition of yet further delay in Plaintiff litigating its claims is too great and would result in undue prejudice given the potential for further deterioration of Plaintiff's multiple properties that were damaged several years ago and subject to the policies at issue. There is simply no guarantee that parallel proceedings would yield inconsistent results in this matter or interfere with the arbitration proceedings as alleged by the Defendants. Accordingly, the Court will not enter a discretionary stay because "the inevitable and direct harm caused to Plaintff[] by requiring [it] to 'stand aside' while the foreign insurers arbitrate is more problematic that the speculative possibility that a future decision in this case may unduly influence a future decision in the arbitration proceeding." *Belmont Commons*, 2025 WL 239087, at *10.

## V. CONCLUSION

For the foregoing reasons;

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration and to Lift and Vacate Arbitration Order, R. Doc. 41, is **GRANTED**. Plaintiff may proceed with its claims against the domestic insurers in this matter, Independent Casualty and Interstate Fire.

New Orleans, Louisiana, this 22nd day of April, 2025.

_____
HONORABLE ELDON E. FALLON